**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEXUS RANGEL and GRANT BICE, individually, and on behalf of all other similarly situated consumers,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>Defendants. | Case No. 1:24-cv-00642-JLT-CDB<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE PENDING RESOLUTION OF ARBITRATION<br><br>(Doc. 16) |

## I. INTRODUCTION

Experian Information Solution, Inc.'s seeks to compel arbitration against Lexus Rangel and Grant Bice under the Federal Arbitration Act. (Doc. 16.) For the reasons set forth below, the Court **GRANTS** the motion to compel arbitration.

## II. BACKGROUND

Plaintiffs filed their complaint against Experian and Loancare (collectively "Defendants"), asserting the following claims: (1) a violation of the Fair Credit Reporting Act § 1681 by both Defendants; (2) a violation of the Consumer Credit Reporting Agencies Act under Cal. Civil Code § 1785.1, et seq. by both Defendants; and (3) a violation of the Rosenthal Fair Debt Collection Practices Act under Cal. Civil Code § 1788.17 by Loancare. (Doc. 1 ¶¶ 31–74.)

Experian filed this motion to compel arbitration, contending that by signing up for

1

"CreditWorks"—Experian's credit monitoring service provided by Experian's affiliate, ConsumerInfo.com, Inc., which does business as Experian Consumer Services ("ECS")—Plaintiffs agreed to arbitrate any claims against Experian.  (Doc. 16-1 at 8–9.)  Both Experian and ECS are wholly owned subsidiaries of Experian Holdings, Inc. under the parent company Experian plc.  (Doc. 16-2, ¶ 2.)  Experian alleges that to enroll in CreditWords, Plaintiffs had to complete a single webform, which required them to enter personal information to create an account.  (Doc. 16-2, ¶¶ 3, 8.)  By clicking the "Create Your Account" button, Plaintiffs received a disclosure that stated in bold text, "I accept and agree to your Terms of Use Agreement . . . I understand that I may withdraw this authorization at any time by contacting ECS."  (Doc. 16-2, ¶¶ 3, 8; 16-2 at 9.)  Plaintiffs had the option to click on a hyperlink, off-set in blue text, that if clicked, would have presented them with the full text of the Terms of Use.  (Doc. 16-2, ¶¶ 4, 9.)  The Terms of Use in effect during Plaintiffs' enrollment in CreditWorks included an arbitration agreement, (Doc. 16-2, ¶¶ 6, 11), which provides in relevant part that:

> ECS and you agree to arbitrate all disputes and claims between arising out of or relating to this Agreement to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to:
>
> [C]laims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.
>
> For purposes of this arbitration provision, references to "ECS," "you," and "us" shall include our respective parent entities, subsidiaries, affiliates (including, without limitation, our service providers) . . . .
>
> . . . .
>
> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the

2

>Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable. However if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall have the power to decide whether this agreement permits class or representative proceedings.
>
>. . . .
>
>YOU AND ECS AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(Doc. 16-2 at 51–53.) Pursuant to these provisions, Experian argues that this court must grant its motion to compel Plaintiffs to arbitrate their claims. (Doc. 16-1 at 7.) Plaintiffs filed their opposition to Experian's motion, (Doc. 23),[1] and Experian subsequently replied, (Doc. 24).

### III.   LEGAL STANDARD

The Federal Arbitration Act governs a written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration. 9 U.S.C. § 2. The FAA confers upon the parties to the contract the right to obtain from the court an order directing that arbitration proceed as contracted. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If the arbitration agreement contains a valid delegation clause, the Court's inquiry is limited to the first step: whether a valid agreement to arbitrate exists. *Henry Schein, Inc. v.*

---

[1] Plaintiffs filed their opposition to Experian's motion to compel arbitration six days after the deadline. The Court acknowledges that it is "permitted, where appropriate," to accept filings when a party missed a deadline due to carelessness. *Pioneer Inv. Srvcs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993). Having considered the factors under *Pioneer*, the Court exercises its discretion to accept Plaintiffs' untimely opposition.

*Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

"Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, an arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Therefore, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms," *id.* (citation omitted), ordering arbitration of a dispute only where neither the agreement's formation or applicability to the dispute is in issue, *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010). Where a party contests either or both matters, the court must resolve the disagreement because a "party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

### IV.   DISCUSSION

**A.   Validity of the Arbitration Agreement**

Experian argues that the parties entered into a valid arbitration agreement because the Plaintiffs "(1) had clear notice of the Terms of Use at the time they enrolled; (2) were admonished that, by clicking an adjacent button, they were agreeing to be bound by the Terms of Use; and (3) they clicked the button, thereby manifesting their assent to the Terms of Use." (Doc. 16-1 at 15.) The dispute as to whether the parties are bound by a given arbitration clause is for the Court to decide. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Though the Plaintiff does not oppose on formation grounds, the Court will nonetheless briefly address the matter.

In deciding whether parties have agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. Written or spoken words or conduct

4

may manifest mutual assent, and action or inaction may imply acceptance of contract terms. *Id.* "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)). The Court must determine whether a reasonable person would believe that an offeree has assented to an agreement based on their outward manifestations of consent. *Id.* However, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 566.

Contracts formed over the Internet generally fall into one of two categories: (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use"; and (2) "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Courts routinely find clickwrap agreements enforceable but are more reluctant to enforce browsewrap agreements. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Websites often "present some hybrid of the two, such as putting a link to the terms of the agreement on the page, sometimes near a button the user must click to continue." *Berman v. Freedom Fin. Network, LLC*, No. 18-cv-01060-YGR, 2020 WL 5210912, at *2 (N.D. Cal. Sept. 1, 2020), *aff'd* 30 F.4th 849 (9th Cir. 2022). Therefore, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856.

To establish that Plaintiffs had inquiry notice of the Terms of Use, Experian must first show that the website "provides reasonably conspicuous notice of the terms to which the consumer will be bound." *Id.* In this context, to be conspicuous, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user

would have seen it." *Id.* The Court looks to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" when determining "whether a reasonably prudent user would have inquiry notice." *Nguyen*, 763 F.3d at 1177. Plaintiffs received the following disclosure in bolded text immediately above the "Create Your Account" button when creating their account: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement." (Doc. 16-1 at 10–13.) The phrase "Terms of Use Agreement" in the disclosure was off set in a blue hyperlink that, if clicked, would have presented Plaintiffs with the full text of the Terms of Use, including the arbitration agreement. (Doc. 16-1 at 10–13.) The Court finds that the Terms of Use here do not constitute a browsewrap agreement because it is "not merely posted on [the] website at the bottom of the screen." *Lee v. Ticketmaster LLC*, 817 F. App'x 393, 394 (9th Cir. 2020). Rather, the Terms of Use is "somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else—click—to assent to the hyperlinked terms." *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017) (citation omitted).

The Court finds that a reasonable user would have inquiry notice because they would be able to locate the Terms of Use via the hyperlink. The notice is conspicuously displayed directly above the "Create Your Account" button in regular sized, bold font. The language "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement" clearly note "that continued use will act as a manifestation of the user's intent to be bound." *See Nguyen*, 763 F.3d at 1177. Furthermore, the Terms of Use hyperlink is "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023). Though Plaintiffs were not required to check a separate box to indicate their assent, Experian provided the Terms of Use adjacent to the "Create Your Account" button, included a hyperlink in a contrasting color, and informed the user that "Create Your Account" would indicate assent to the terms. (Doc.16-2 at 9.) Based on these features, the Court finds that the website design provides constructive notice of the Terms of Use. *See DeVries*, 2017 WL 733096, at *6 (finding that the website design provided constructive

notice where "[t]he text containing the Terms and Conditions hyperlink was located directly above that button and indicated that clicking 'Submit Secure Purchase' constituted acceptance of those terms").

Next, Experian must show that Plaintiffs unambiguously manifested their assent to be bound by the Terms of Use. *See Berman*, 30 F.4th at 857. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858. Experian contends that users were bound by the Terms of Use because users were required to affirmatively acknowledge the agreement before proceeding with use of the website. (Doc. 16-1 at 15.) The Court agrees. Because Plaintiffs were informed that by clicking "Continue" they were affirming that they would be bound by the Terms of Use, Plaintiffs unambiguously assented to the Terms of Use. *See Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (holding that an arbitration agreement was valid because the users were required to affirmatively agree to the Terms of Use by clicking "Continue" when the user was informed that by clicking that button, they would be bound by the Terms of Use that were hyperlinked and available for review). Therefore, the Court finds that the website provided sufficient notice of the Terms of Use and created a valid binding arbitration agreement between Plaintiffs and Experian.

**B.     Scope of Arbitration Agreement**

      1.   <u>Experian as a Party to the Arbitration Agreement</u>

Preliminarily, Experian argues that, as an affiliate of ECS, it may directly enforce the arbitration agreement in the CreditWorks Terms of Use. (Doc. 16-1 at 16–20.) Experian cites to *Meeks v. Experian Info. Sols.*, No. 21-17023, 22-15028, 2022 WL 17958634, at *1–2 (9th Cir. Dec. 27, 2022), where the court held that Experian was a party to the arbitration agreement— which is identical to the Terms of Use here—because Experian is defined as an affiliate of ECS in the arbitration agreement. In the alternative, Experian argues that at a minimum, Experian may compel arbitration as a third-party beneficiary of the contract. (Doc. 16-1 at 17–20.) However,

Experian argues that whether Experian is a third-party beneficiary is an issue to be determined by the arbitrator, not the Court. (Doc. 16-1 at 17–18.) Parties defined as "affiliates" in an arbitration agreement may enforce the agreement as a party in an action. *See Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 Fed. App'x. 472, 475 (9th Cir. 2018). Because Plaintiffs do not provide any opposition to Experian's enforcement of the arbitration agreement as an affiliate, the Court finds that Experian presents sufficient evidence to establish that Experian is an affiliate of ECS during the time that Plaintiffs were enrolled in CreditWorks. *See Meeks*, 2022 WL 17958634, at *2. Therefore, the Court concludes that Experian was a party to the arbitration agreement and may enforce the agreement.

        2.   Delegation of Scope to the Arbitrator

Experian argues that the arbitrator must decide whether Plaintiffs' claims fall within the scope of the arbitration agreement. (Doc. 16-1 at 20.) Plaintiffs contend that the delegation clause in the arbitration agreement is unconscionable because "the arbitrator is incentivized, financially, to find the claims subject to arbitration." (Doc. 23 at 2.)

Experian asserts that the Terms of Use are an unambiguous expression of the parties' intent to arbitrate the issue of arbitrability. The arbitration agreement provides that "[a]ll issues are for the arbitrator to decide, *including the scope and enforceability of this arbitration provision* as well as the Agreement's other terms and conditions." (Doc. 16-2 at 52 (emphasis added).) The arbitration agreement also expressly incorporates "the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collective, 'AAA Rules')." (Doc. 16-2 at 52.) Because the delegation provision expressly states that an arbitrator is to decide any arbitrability issues while also expressly incorporating the AAA arbitration rules, the Court concludes that Plaintiffs and Experian have unmistakably delegated the question regarding the scope of the arbitration agreement to an arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that an express delegation clause and an incorporation of the AAA rules establish a clear delegation of arbitrability to an arbitrator).

Plaintiffs argue that the delegation provision is unconscionable because a delegation to a single arbitrator creates a financial incentive for the arbitrator to decide arbitrability in favor of

continued arbitration. (Doc. 23 at 3.) Plaintiffs contend that "allowing for separate arbitrators to decide threshold issues than those deciding the merits" is "the only way to ensure there is an impartial look at threshold issues." (Doc. 23 at 3.) According to Plaintiffs, because the single arbitrator has a financial interest in the outcome of any threshold issues, they cannot be impartial and "may shade his opinion in favor of allowing the dispute to continue in arbitration instead of sending it back to court." (Doc. 23 at 6.) This argument is unavailing. California courts found such an argument preempted by the Federal Arbitration Act, *see Malone v. Superior Ct.*, 226 Cal. App. 4th 1551, 1569–70 (2014), and district courts in California have rejected similar arguments as wholly speculative and impermissibly hostile to arbitration in light of the Feder Arbitration act's contrary admonition, *see Brown v. Dow Chem. Co.*, No. 18-cv-0709, 2019 WL 484211, at *3 (N.D. Cal. Feb. 7, 2019); *see also Bennett v. Anheuser-Busch Com. Stratefy, LLC*, No. 2:22-cv-01239, 2024 WL 1241916, at *5 (E.D. Cal. Mar. 22, 2024). Plaintiffs offer no other arguments for a finding that the delegation provision is unconscionable or otherwise unenforceable. Thus, the Court finds that the arbitration agreement has a valid delegation clause, and the arbitrator must decide any questions regarding both arbitrability and the merits.

**C.     Stay of Action**

Section 3 of the FAA provides that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Experian has made such a request as to the claims against it. (Doc. 16-1 at 20.) The Court stays this action as to the claims against Experian pending completion of arbitration. *See Hansber v. Ulta Beauty Cosmetics, LLC*, 640 F. Supp. 3d 947, 960 (E.D. Cal. Nov. 9, 2022) (explaining that the court has discretion to "control its docket" and "stay litigation among nonarbitrating parties pending the outcome of the arbitration"); *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 986 (9th Cir. 2017) (holding that the district court erred in denying a stay when the scope of arbitration was delegated to an arbitral tribunal).

**CONCLUSION**

For the reasons set forth above:

1. Defendant Experian's motion to compel arbitration is **GRANTED**.

    2. Plaintiffs' claims against Defendants are **STAYED** pending the completion of arbitration.

    3. Plaintiffs and Defendants are required to notify the Court that arbitration proceedings have concluded within fourteen days of the issuance of the arbitrator's decision.

    4. Because all claims in this action are now stayed pending the completion of arbitration, all dates currently on the calendar in this case are vacated.

IT IS SO ORDERED.

Dated: __**September 16, 2024**__          _/s/ Jennifer L. Thurston_
                                                                 UNITED STATES DISTRICT JUDGE